UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JEFFREY M. SCHREIBER,<br>     Plaintiff | )<br>)<br>) |
| v. | )    2:03 CV 281JM<br>) |
| JOHN BUNCICH,<br>Lake County Sheriff, *et al.*,<br>     Defendants | )<br>)<br>) |

### OPINION, FINDINGS OF FACT,
### CONCLUSIONS OF LAW and
### ORDER FOR ENTRY OF FINAL JUDGMENT

This case came before the court for a bench trial on August 30, 2004, on the allegations of plaintiff Jeffrey M. Schreiber's ("Schreiber") amended complaint, and the answer filed by defendant "Sheriff of Lake County" only,[1] the other defendants having previously been dismissed from the case on motion. Schreiber, who appeared *pro se*, provides a good summary of the substance of his complaint, in his proposed findings filed after the conclusion of the trial:

> The plaintiff has brought this action under 42 U.S.C.
> [§ ]1983 for violations of the Agreement on Detainers, the
> Uniform Criminal Extradition Act, the Fifth amendment of
> the United States Constitution, and the Fourteenth
> Amendment of the United States Constitution.
>     He claims that his due process rights were violated; that
> he was deprived of property without due process; that he
> was not promptly informed of the nature and source of a

---

[1] Attorney John M. Kopack filed an appearance on behalf of "Lake County Sheriff's Department and Rogelio 'Roy' Dominguez, Sheriff of Lake County, Indiana," and answered the complaint on behalf of "Sheriff of Lake County." No appearance or answer has ever been filed on behalf of John Buncich, individually. The ramifications of these facts will be considered in the conclusions of law, below.

> detainer lodged against him; that he was not informed of his right to request disposition by the official having custody of him; that there was no condition of return upon his surrender to another jurisdiction; and that the force and effect of a detainer had not been removed when released to another jurisdiction.

Plaintiff's Conclusions of Law filed September 15, 2004, pp. 2-3.

After hearing all of the evidence, taking into account the credibility of the witnesses, considering the parties' pleadings, the exhibits admitted into evidence and the parties' proposed findings of fact and conclusions of law, the court now makes its findings of fact and conclusions of law pursuant to FED. R. CIV. P. 52(a), and orders entry of final judgment.

## Findings of Fact

*Findings of fact re: Interstate Agreement on Detainers, Uniform Criminal Extradition Act, and Lake County Jail processing fee*

Plaintiff Jeffrey Schreiber ("Schreiber") was convicted on May 14, 1999, of two Class E Felonies for failure to pay child support in the Circuit Court of Columbia County, Wisconsin, and placed on 36 months of supervised probation by the court. Ex. A, pp. 14, 49 and 50). As a condition of that probation, Schreiber executed a "Interstate Compact Application, Agreement to Return." In that document, he stated that he believed that supervision in Indiana, rather than Wisconsin, would benefit him because his family currently resided there and he had a permanent residence and employment there, and he agreed to "waive extradition to the State of Wisconsin from any Jurisdiction in or outside the United States where I may be found and also agree[d]

2

[not to] . . . contest any effort by any jurisdiction to return [him] . . . to the State of Wisconsin." Ex. A, p. 16-17.

On March 8, 2001, Schreiber was arrested by officers of the Highland, Indiana, Police Department, and charged with public intoxication. The next day, March 9, 2001, he was charged with misdemeanor public intoxication under Lake County, Indiana, Superior Court cause number 45D07-0103-CM-00417, appointed an attorney and released on his own recognizance. After a number of continuances requested by Schreiber's attorney, on August 30, 2002, prosecution was deferred for six months, with a review date of February 28, 2003 set. Ex. B, p. 4.

On July 10, 2001, the Lake County Council adopted Ordinance No. 1217-B, directing the Lake County, Indiana, Sheriff to charge and collect a $25.00 processing fee from every non-indigent person booked into the Lake County, Indiana, Jail ("LCJ"). Ex. D. Ordinance 1217-B does not provide that the fee shall be refunded if charges are not pursued, if charges are dismissed, or if the inmate is ultimately found not guilty. Id. No evidence has been introduced showing that there is a way for a person who was wrongfully arrested to seek a refund of the processing fee.

Early in the a.m. hours of Sunday, July 22, 2001, Schreiber was arrested by officers of the Hammond, Indiana, Police Department for operating a motor vehicle while intoxicated and resisting law enforcement ("OWI/RLE"). He was booked into the LCJ at 7:20 a.m., and charged the $25.00 processing fee. The following day, July 23, 2001, the Lake County, Indiana, prosecutor filed an information and probable cause affidavit

3

on those charges, initiating Lake County Superior Court cause number 45G01-0107-DF-00160, and an arrest warrant was issued. Ex. A p. 39; Ex. B p. 3.

On July 23, 2001, at 12:43 p.m., the LCJ received a two page fax from Linda Lembcke of the State of Wisconsin Department of Corrections ("WDOC").[2] The fax contained a copy of a violation warrant advising that Schreiber had absconded from probation supervision and his whereabouts and activities were unknown until the time of his apprehension. The cover message on the fax stated "Please place a HOLD on this inmate for extradition by the State of Wisconsin Department of Corrections," and the violation warrant stated: "Please use this Violation Warrant as a **HOLD** for the State of Wisconsin Department of Corrections. **Wisconsin will extradite. We request the offender held with no bond or bail issued.**" Ex. A p. 13-1.

Later that day at 1:56 p.m. the LCJ received a second fax[3] from the WDOC accompanied by a copy of the "Interstate Compact Application, Agreement to Return" that Schreiber had executed on May 14, 1999. Ex. A, p. 15-17. Schreiber's LCJ "booking card" was stamped "HOLD" with "Wisc. DOC." handwritten over the HOLD stamp. Ex. A, p. 27; testimony of Kim Parker ("Parker testimony").[4]

---

[2] Although the cover page of the facsimile indicates that it is being sent to the Lake County Jail in Waukegan, Illinois, this is an obvious error. The fax was sent to the telephone number of the Lake County Jail in Crown Point, Indiana.

[3] Like the first, this fax had an erroneous cover page directed to the Lake County Jail in Waukegan, Illinois.

[4] Officer Parker testified that she is a Correctional Officer at the LCJ and functions as the official keeper of records, and the court so finds.

4

Staff at the LCJ routinely accesses the computer data base for the Lake County Courts to determine, for inmates being held on OWI charges, whether charges have been filed. If no charges have been filed within 48 hours of the inmate's arrest date,[5] the inmate is released from the LCJ pending the filing of charges. Parker testimony.

On July 24, 2001, Officer Parker noted "No charges filed 7-24-01 @ 7:20 a.m." on Schreiber's LCJ arrest record after accessing the data base for the Lake County Courts and finding no charges pending for the OWI arrest of July 22, 2001. Ex. A, p. 10; Parker testimony. Officer Parker wrote "Rel[eased] 7-24-01 No Chgs Filed" on Schreiber's LCJ booking card to advise LCJ staff that Schreiber was not being held for his OWI arrest as no charges had been filed to date. Ex. A, p. 27; Parker testimony. No evidence has been offered by either party to explain why the charges and warrant filed the prior day under cause number 45G01-0107-DF-00160 were not in the computer data base. Because the court finds Officer Parker's testimony on this issue, supported by contemporaneous records, credible, the court can only speculate that error or delay in data input was the cause.

On July 25, 2001, Schreiber appeared before Lake County Superior Court Magistrate Judge Kathleen A. Sullivan for an extradition hearing, under cause number 45G02-0107-MC-00217. Schreiber testimony; Ex. A, p. 21. Magistrate Judge Sullivan

---

[5] The proposed findings of fact submitted by defendant state that this 48-hour period excludes weekends, citing the testimony of Officer Parker as support. However, Officer Parker testified that a person arrested at 10:00 p.m. on a Friday night would walk out of the jail at 10:00 p.m. Sunday night, if no charges were filed. Thus, the court finds as a fact that the 48-hour period includes weekends.

5

advised Schreiber of the cause of his arrest and the rights guaranteed by the Uniform Criminal Extradition Act. Id. Schreiber voluntarily signed a waiver of extradition stating that he would surrender to the state of Wisconsin without further proceedings. Ex. A, p. 20. Magistrate Judge Sullivan entered an order directing the Sheriff to release Schreiber to agents of the WDOC "upon their arrival," but that if Schreiber did "have charges pending or is serving a term of imprisonment, then the sheriff is directed to release the defendant to the agents only after all Indiana cases have been disposed or sentences have been completed." Ex. A, p. 21. The order also directed the clerk to "notify the sheriff," and to "show this case as disposed." Id.

The following day, July 26, 2001, Schreiber asked staff at the LCJ whether charges were pending against him in connection with the OWI/RLE arrest. Schreiber testimony. At that time, Schreiber was told that no charges were pending and shown the document admitted into evidence as Ex. A, p. 22. Schreiber testimony. This document appears to be, and the court so finds, a fax sent by a LCJ Officer named Galanos to the WDOC, advising that Schreiber had been "arrested on your warrant" and has "signed their waiver of extradition. Please notify this department of the DATE and TIME of your pick up." The fax also stated that the "LOCAL CHARGES on the above named individual have been taken care of."

The following page in group Ex. A appears to be, and the court so finds, a response from the WDOC to the fax admitted as Ex. A, p. 22, which states that "Transcor America, Inc., has been authorized to act as Wisconsin's agent in transporting

6

above [Schreiber] back to Wisconsin. Transcor will contact you directly regarding exact day and time of pickup." Ex. A, p. 23.

The following page in group Ex. A appears to be, and the court so finds, a "Prisoner Receipt" issued by TransCor America, Inc., to the LCJ, showing that Schreiber was picked up for transportation to Columbia County Jail in Portage, Wisconsin, on August 6, 2001. Ex. A, p. 24.

Officer Parker testified that neither the Sheriff nor the staff at the LCJ were advised of or aware of any pending charges against Schreiber under cause number 45G01-0107-DF-00160 before he was extradited to Wisconsin on August 6, 2001. However, during cross-examination Officer Parker admitted that, even if her computer screen had been "flashing" showing an outstanding warrant when agents from the WDOC arrived to transport Schreiber, he would have been released "because they came a long way to get him." Thus, in what is probably a "mixed" finding, that is, an inference that is both a finding of fact and conclusion of law, the court finds that the LCJ has a custom or policy of releasing inmates for extradition even when charges are pending against them.

Schreiber testified that he has never met or conferred with either Sheriff Buncich or Buncich's successor in office, and there was no other evidence to show that Sheriff Buncich or Buncich's successor in office had any personal knowledge of, or involvement in, Schreiber's arrests, his incarcerations in the LCJ or his extraditions between Indiana and Wisconsin during 2001 and 2002. Instead, Schreiber testified that he inferred Sheriff

Buncich's personal knowledge and involvement from the fact that subordinates of Buncich wrote Schreiber letters on Buncich's letterhead, and from his belief that "ineffective supervision amounts to personal participation."

On August 17, 2001, Schreiber sent a letter to the Clerk of the Lake County Superior Court requesting the status and disposition of any charges pending at the time of his extradition on August 6, 2001. Schreiber testimony; Ex. B, p. 3 (entry for August 22, 2001). On August 22, 2001, Lake County Superior Court Judge Richard W. Maroc, entered an order in case number 45G01-0107-DF-00160, refusing to accept Schreiber's request for disposition for filing, because Schreiber was not within the jurisdiction of the court, and advising Schreiber that any request for disposition of charges pending in Indiana had to begin with a written request to the official holding him in Wisconsin, and that his letter to the Clerk of the Court seeking disposition would not trigger any deadlines under the Agreement on Detainers. Ex. B, pp. 3, 39.

On October 11, 2001, Schreiber's probation on the two Wisconsin felony charges was revoked and he was sentenced by Judge Miller of the Columbia County, Wisconsin Circuit Court to serve consecutive one (1) year terms in the Columbia County Jail on each felony charge. Ex. A, pp. 47, 49.

On October 23, 2001, Schreiber wrote a letter to the Columbia County Circuit Court requesting extradition to Indiana for disposition of charges pending against him in Indiana. On October 26, 2001, James O. Miller, Circuit Judge, Columbia County, Wisconsin, Circuit Court, sent a letter to Schreiber advising that Indiana had not

8

initiated extradition, and until a request for extradition was made by the State of Indiana, Schreiber would continue to serve his sentence in the Columbia County Jail. Ex. B, p. 34; Schreiber testimony.

On February 4, 2002, Schreiber sent a letter to Captain Kuhl of the Columbia County, Wisconsin Sheriff's Department, requesting disposition of his Indiana charges.[6] In that letter Schreiber requested disposition of the charges pending in both case number 45D07-0103-CM-00417, the public intoxication case in which prosecution had been deferred for six months, and case number 45G01-0107-DF-00160, the OWI/RLE case. Schreiber testimony; Ex. A, p. 30. On February 6, 2002, Captain Kuhl forwarded Schreiber's request for disposition to Lake County Prosecutor Bernard Carter. Ex. A, pp. 46-52.

On February 11, 2002, Schreiber sent letters to the Clerk of the Lake County, Indiana, Superior Court and to Superior Court Judge Maroc, requesting dismissal of all charges in case number 45G01-0107-DF-00160 (the OWI/RLE case). Ex. B, pp. 26-28.

On March 1, 2002, the Lake County Prosecutor sent a letter to Captain Kuhl and to Schreiber requesting Schreiber's extradition to Indiana, pursuant to Schreiber's request for disposition of detainers in Indiana, advising that agents for the State of Indiana would take Schreiber into custody on April 17, 2002. Ex. B, p. 24.

---

[6] Schreiber never made request for disposition of the charges to official responsible for his custody, as required under the Interstate Agreement on Detainers. Schreiber v. Rowe, No. 03-C-0178-C (W.D. Wisc. 2004).

9

On April 17, 2002, Schreiber was released from the Columbia County Jail and transported and booked into the LCJ. He again was charged the $25.00 processing fee required by Lake County Ordinance No. 1217-B.

On April 18, 2002, Schreiber appeared in court on his OWI and RLE felony charges and was appointed a public defender to represent him on the pending charges. Ex. B, p. 3 (entry for April 18, 2002). Schreiber again executed a Waiver Of Extradition to the Columbia County Jail, and, as Magistrate Judge Sullivan had previously done, Charles H. Graddick, Judge Pro Tempore, Lake County, Indiana, Superior Court, issued an order directing the Sheriff to release Schreiber to agents of the WDOC "upon their arrival," but that if Schreiber did "have charges pending or is serving a term of imprisonment, then the sheriff is directed to release the defendant to the agents only after all Indiana cases have been disposed or sentences have been completed." The order also directed the clerk to "notify the sheriff," and to "show this case as disposed." Ex. B., p. 3 (entry for April 18, 2002); p. 36.

On April 25, 2002, public defender Angela Jones appeared for Schreiber on the pending OWI/RLE charges. Ex. B, p. 3. On June 20, 2002, she filed a motion to dismiss the charges, based on two alleged violations of the Interstate Agreement on Detainers: 1) Schreiber's extradition to Wisconsin on August 6, 2001, while charges were pending in Indiana; and 2) Indiana's failure to dispose of those charges within 120 days after Schreiber was extradited from Wisconsin back to Indiana. Ex. B, p. 2 (entry for June 20, 2002); pp. 58-66.

10

On October 4, 2002, Superior Court Judge Maroc granted Schreiber's motion to dismiss the pending OWI/RLE charges, and ordered the Lake County Sheriff to return Schreiber to the custody of the Columbia County Jail in Portage, Wisconsin. Ex. A, p. 56; Ex. B, p. 73.

On February 28, 2003, the review date that had been set on August 30, 2002, for the deferred prosecution of case number 45D07-0103-CM-00417 (the misdemeanor public intoxication case), the State of Indiana moved to dismiss the case. Ex. B, p. 4. On March 5, 2003, that request was granted and the case was dismissed. Ex. B, p. 4.

Schreiber's only evidence on the damages he suffered as the result of the alleged deprivations of his rights is his testimony that he believes that the outcome of the Wisconsin parole revocation proceedings would have been different, had charges not been pending against him in Indiana, and that, while he was incarcerated at the Columbia County Jail in Portage, Wisconsin, after his August 6, 2001, extradition, he was denied work release privileges because of the pending Indiana charges. Ex. A, p. 47.

*Findings of fact concerning alleged misappropriations from Schreiber's commissary account*

The LCJ maintains detailed records of each inmate's property, and of all funds deposited into, charged against and withdrawn from inmate commissary accounts. Parker testimony.

During 2001 and 2002, Schreiber had credits to his LCJ commissary account totaling $455.31, and at the time of his release on November 3, 2002, his commissary

11

account, after applying all debits and credits, had a net balance of $00.00. Parker testimony; Ex. C, pp. 1-6.

The deposits to his commissary account were made by family and friends. Schreiber testimony. Other than stating that he "doesn't agree" with the debits from the account (except for debits for court filing fees), Schreiber presented no evidence during trial that any of the debits to his commissary account were unauthorized or improper. Schreiber testimony.

The LCJ has a policy and grievance procedure, contained in an LCJ Inmate Handbook which is provided to all inmates when they are booked into the LCJ. Parker testimony. Schreiber has not alleged, nor did he present any evidence during the trial, that he filed any grievance pursuant to the LCJ grievance procedure, concerning the funds he alleges were misappropriated from his commissary account. Amended Complaint; Schreiber testimony.

Schreiber is seeking monetary damages only, not injunctive relief. Amended complaint; Plaintiff's Conclusions of Law filed September 15, 2004, p. 7

**Conclusions of Law and Ultimate Findings**

Because Schreiber alleges violations of his constitutional rights for which he may bring suit pursuant to 42 U.S.C. § 1983, the court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b)(2). To the extent, if any, that Schreiber is alleging that the removal of funds from his LCJ

commissary account was a conversion under Indiana tort law, the court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Schreiber has never specified, in the allegations of his complaint or otherwise, whether his suit was brought against defendant John Buncich in his individual capacity, his official capacity, or both. An official-capacity suit should be presumed "when the indicia of an official policy or custom are present in the complaint." *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991). Schreiber's amended complaint does not contain such indicia, but reads as if he intends an individual-capacity suit against Buncich only. In addition, the answer filed (more on by whom in a moment) asserts the defense of qualified immunity, which is available in individual-capacity suits only. *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105-06, 87 L. Ed. 2d 114 (1985).

On the other hand, no appearance or answer was ever filed on behalf of John Buncich, and Schreiber never sought entry of a default against Buncich. As noted above, attorney Kopack filed an appearance on behalf of the "Lake County Sheriff's Department and Rogelio 'Roy' Dominguez, Sheriff of Lake County, Indiana," and answered on behalf of the Sheriff of Lake County, making it appear that the defendant perceived the suit to be an official-capacity suit against the Lake County Sheriff. But in another contrary turn, at trial attorney Kopack flatly asked Schreiber "[y]ou did not sue Lake County in this litigation, did you?" Schreiber responded: "I sued the Sheriff's Department."

In determining whether a suit is an individual- or official-capacity suit, a court should consider the manner in which the parties have treated it. *Conner v. Reinhard*, 847 F.2d 384, 394 (7th Cir. 1988). Given the ambiguous state of affairs just summarized, the defendant's failure to pin Schreiber down on the issue, through interrogatories or otherwise, and Schreiber's *pro se* status, the court concludes that this is both an individual-capacity suit against John Buncich, and a suit against him in his official capacity as Lake County Sheriff, making the governmental entity for which he or his successor in office acted the true defendant. *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3104-05, 87 L. Ed. 2d 114 (1985); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 2035 n. 55, 56 L. Ed. 2d 611 (1978); *Perkins v. Silverstein*, 939 F.2d 463, 469 (7th Cir. 1991); *Hill*, 924 F.2d at 1372.

Indiana's adoption of the Interstate Agreement on Detainers ("IAD") is found in Ind. Code § 35-33-10-4. Because the IAD is an interstate compact sanctioned by Congress, it is a federal law, subject to uniform federal interpretation. *Cuyler v. Adams*, 449 U.S. 433, 442, 101 S. Ct. 703, 708-09, 66 L. Ed. 2d 641 (1981). In *Cuyler* the Court recognized that an action under 42 U.S.C. § 1983 will lie for violations of the IAD. *Id.*, 449 U.S. at 450, 101 S. Ct. at 712. The Uniform Criminal Extradition Act, Ind. Code § 35-33-10-3 ("UCEA"), on the other hand, has not been approved by Congress and so is solely a state statute. It is of course true, however, that violation of a state statute that results in deprivation of due process under the Constitution of the United States is

14

actionable under § 1983. *Germano v. Winnebago County, Ill.*, 403 F.3d 926, 927 (7th Cir. 2005) (citing *Easter House v. Felder,* 910 F.2d 1387, 1394 (7th Cir.1990)).

  The UCEA and the IAD impose duties upon the state of Indiana. In carrying out those duties, Sheriff Buncich, or his successor in office, or the subordinates of either, acted as agents of the State of Indiana. *See McCurdy v. Sheriff of Madison County*, 128 F. 3d 1144, 1145-46 (7th Cir. 1997). Thus, the official-capacity claim in this case is against the State of Indiana, not against Lake County, Indiana. *Id*.

  There is no *respondeat superior* liability under § 1983. *Monell*, 436 U.S. at 691, 98 S. Ct. at 2018. Negligent supervision is not enough to establish personal liability under § 1983. *Wilson v. City of Chicago*, 6 F.3d 1233, 1241(7th Cir. 1993). Thus, in order to hold John Buncich liable in his individual capacity under § 1983 for any of the deprivations alleged in this action, Schreiber must establish that Buncich was personally involved in the actions complained of, or that he facilitated, condoned, approved or turned a blind eye to those actions. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). Schreiber has not proved Buncich's personal involvement, meeting this standard, by a preponderance of the evidence, and Buncich is not individually liable.

  As for the State of Indiana, via the official capacity claim against Buncich and his successors, § 1983 "creates no remedy against a State." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69, 117 S. Ct. 1055, 1070, 137 L. Ed. 2d 170 (1997); *Zambian v.*

*Reinsert*, 291 F.3d 964, 975-76 (7th Cir. 2002). Thus, the State of Indiana may not be held liable in this action.[7]

In the interest of full and fair consideration of Schreiber's claims, the court assumes that, because of the alleged delays in honoring his rights under the UCEA and IAD of which Schreiber complains, the sheriff's office may have exceeded the scope of state authority delegated to it, making this an official capacity suit against Lake County. *See McCurdy*, 128 F. 3d at 1146. Even if that is the case, because there is no *respondeat superior* liability under § 1983, Schreiber must prove that the alleged deprivations complained of were caused by the execution of governmental policy or custom. *Monell,* 436 U.S. at 691, 98 S. Ct. 2018; *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

The court concludes that Schreiber did establish, through Officer Parker's admission during cross-examination, that a policy or custom of allowing extradition, even when there are pending charges, exists at the LCJ. However, Schreiber did not prove by a preponderance of the evidence that his extradition to Wisconsin on August 6, 2001, was in execution of that policy. Instead, based on Officer Parker's credible testimony and the contemporaneous documentary record, the court concludes that his extradition resulted from unknown and unproven acts of negligence that resulted in the staff at the LCJ not knowing that there were outstanding charges against Schreiber. Thus, Lake County cannot be held liable for Schreiber's claims in connection with the August 6, 2001, extradition.

---

[7] In addition, Schreiber never served process on the State of Indiana.

As to the events that occurred after that, i.e., Schreiber's claims that his demands for return to Indiana for disposition of the charges were not honored, and that the charges were not disposed of in a timely fashion, violating the IAD and depriving him of due process, Schreiber has neither alleged nor proven by a preponderance of the evidence any municipal policy or custom caused those alleged violations. Therefore, the court concludes that Lake County cannot be held liable.

The court concludes that, as to the $25.00 processing fee charged to inmates being booked into the LCJ pursuant to Lake County Ordinance No. 1217-B, the sheriff acts as an agent of Lake County, and so Schreiber's official capacity claim is a claim against Lake County. The same is true of Schreiber's claim that funds were misappropriated from his LCJ commissary account.

As to the processing fee, it is clear that in following the Lake County Ordinance, the sheriff is carrying out Lake County policy. Schreiber claims that because he "did not choose" to be booked into the LCJ, it is an unconstitutional taking of his property. Other than this assertion, Schreiber has done nothing more to establish that Ordinance No. 1217-B is unconstitutional. While determining the constitutionality of Lake County Ordinance No. 1217-B appears to be an issue that might best have been resolved through summary judgment, no summary judgment motion was filed, and the parties post-trial proposed conclusions of law provide little aid to the court.

Persons are entitled to due process of law before being deprived of property by the government. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S. Ct.

1904, 104 L. Ed. 2d 506 (1989). Ordinarily, this means that an individual must have notice and an opportunity to be heard before the State takes the individual's property. *United States v. James Daniel Good Real Property,* 510 U.S. 43, 51, 114 S. Ct. 492, 126 L. Ed.2d 490 (1993); *Parratt v. Taylor,* 451 U.S. 527, 543-44, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). In some circumstances, a post-deprivation remedy may suffice. *Parrat*; *Hudson v. Palmer,* 468 U.S. 517, 531, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).

On the evidence before the court, it appears that Schreiber had neither an opportunity to be heard before he was charged the booking fee nor a means to seek a refund of the fee once the charges against him were dismissed. The court concludes that, as applied to Schreiber, Ordinance No. 1217-B was unconstitutional. *Cf. Allen v. Leis*, 154 F. Supp. 2d 1240 (S.D. Ohio 2001). Therefore, he is entitled to a refund of the booking fees collected, with post-judgment interest thereon. Punitive damages are not recoverable from a municipal entity in a § 1983 suit. *City of Newport v. Fact Concerts*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981).

As to Schreiber's claim that funds were misappropriated from his LCJ commissary account, even if the allegation is true, he has not provided any evidence that it was done pursuant to a municipal policy or custom, so Lake County is not liable. Moreover, the court infers that Schreiber's family and friends made deposits to his commissary account for a reason: inmates use these accounts to purchase personal items such as toiletries and cigarettes. Schreiber's statement that he "doesn't agree"

18

with the debits from his account is, without more, not sufficient to establish by a preponderance of the evidence that funds were misappropriated from his account. This is an additional reason the claim fails, and is also the reason that any claim of conversion under Indiana state law that Schreiber may be attempting to prove also fails.

**Order for Entry of Judgment**

For the reasons above, and because of prior rulings on motions in this case, the Clerk is ordered to **ENTER FINAL JUDGMENT** in favor of defendant Sheriff John Buncich in his individual capacity; in favor of defendant Anna Anton, in both her individual and official capacities; in favor of defendant Bernard Carter, in both his individual and official capacities; and against plaintiff Jeffrey M. Schreiber, who shall take nothing by way of his complaint; and in favor of plaintiff Jeffrey M. Schreiber, and against Rogelio 'Roy' Dominguez, Sheriff of Lake County, Indiana, in his official capacity only, in the amount of $50.00.

**SO ORDERED.**

Enter: June 27, 2005

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT